IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 2:06cr136-MEF |
| | ) | |
| STEVEN RANDY SULLIVAN | ) | |

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

This case is before the court on defendant Steven Randy Sullivan's Motion to Suppress Search filed July 13, 2006 (Doc. # 11), and the government's response filed on July 21, 2006 (Doc. #15). The court held a hearing on the suppression motion on August 3, 2006. For the reasons discussed below, the court concludes that the motion to suppress is due to be granted.

### **Facts**

On August 16, 2005, Lyn Yeager signed a petition for the involuntary commitment of his daughter, Amy Yeager, which he filed in the Probate Court of Montgomery County. The petition represented that Amy Yeager was 28 years old, that her residence was unknown but she was currently located at the Jackson Hospital emergency room, and that Lyn Yeager believed that his daughter was mentally ill based on his sworn statement that:

> She threatened to kill herself recently and has threatened her uncle. She is emotionally unstable and refuses voluntary treatment. Her former employer had recommended that she receive counseling, but she has stopped going. She has distanced herself from friends and family. She had been missing for three days, but was found last night by family and taken to the ER. She attempted to leave AMA. Her family feels she is a threat to herself in this condition.

Defendant's Ex. A.

On August 25, 2005, Montgomery County Probate Judge Reese McKinney signed an "emergency order" which directed, *inter alia*, "that Amy Yeager be detained and confined on an emergency basis at Baptist E.R. South/Meadhaven for treatment and evaluation until such time as a probable cause hearing shall be held." Defendant's Ex. B. The order directed the sheriff of Montgomery County or his authorized deputy to "take into custody the above named respondent using necessary means to enter the property and forthwith deliver said person to the proper authorities at Baptist E.R. South/Meadhaven[.]" Amy Yeager's location was listed on the emergency order as "2111 Yarbrough Circle, Montg. 36110."

On August 25, 2005, a tactical team including Lieutenant Parker, Sergeant Bottiman, Sergeant Barrett and several other deputies from the Montgomery County Sheriff's Department drove to 2111 Yarbrough Circle in Montgomery to serve the emergency commitment order and pick up Amy Yeager. The deputies knocked on the door, but there was no response, so they entered the residence. Sergeant Barrett, the only witness called to testify at the suppression hearing, did not recall whether or not force was used to breach the door. He testified that "there was a subject at the door when we made entry, he was – I don't know if he was opening the knob or our guy turned the knob or if he bumped it."

When the tactical team entered the residence they initially "swept" from room to room to "secure" the premises – that is, to ensure that no threats to their safety were present. In one bedroom, they found defendant Steven Randy Sullivan asleep with his jeans on. When he stood up and turned around, the butt or handle of a handgun was visible, stuck down in defendant's underwear. The officers took away the gun and searched defendant Sullivan for

2

other weapons, locating a knife strapped to his leg. Defendant was identified and arrested based on an outstanding warrant, and subsequently charged with an offense under 18 U.S.C. §922(g)(1) (convicted felon in possession of a firearm). The officers did not find Amy Yeager within the residence.

## Discussion

Defendant Sullivan contends that the Fourth Amendment required the sheriff's deputies to obtain a search warrant from a neutral and detached magistrate or judge based on probable cause before searching the residence at 2111 Yarbrough Circle for Amy Yeager. He argues that the petition for the emergency order "sets forth absolutely no probable cause for the search of 2111 Yarbrough Circle ..., does not establish why [Amy Yeager] may be located at that residence, why the residence may pose a danger to Ms. Yeager (or others) or contain evidence of contraband or criminal activity." Motion to Suppress Search at 3. Accordingly, defendant contends, "the 'fruits of the search' must be suppressed." Id.

The government maintains that the emergency order issued on the date of the search specifically named 2111 Yarbrough Circle as Amy Yeager's location and properly authorized sheriff's deputies to enter that location and take Yeager into custody pursuant to Ala. Code §§ 22-52-7 and 8. Response to Motion to Suppress at 1-2. The government argues that, once the deputies were in the residence, they were entitled to perform a security sweep of the premises for their own protection under Maryland v. Buie, 494 U.S. 325 (1990). Id. at 2.[1]

---

[1] The government does not argue that any exception to the warrant requirement such as exigent circumstances or consent justified the entry into the residence. Also, the government has not

Other than these bare bones legal arguments, which are offered with only minimal supporting case law or argument, counsel for both sides provide the court with little assistance in analyzing the substantial constitutional issues in this case and applying appropriate legal standards to the relatively scanty evidence presented at the suppression hearing.

The court's analysis begins with the Alabama statute authorizing the judge of probate to issue an emergency order for the seizure and detention of an individual named in a civil petition for involuntary commitment. That statute provides, *inter alia*:

> (a) When a petition has been filed seeking to have limitations placed upon the liberty of a respondent pending the outcome of a final hearing on the merits, *the probate judge shall order the sheriff of the county in which the respondent is located to serve a copy of the petition upon the respondent and to bring the respondent before the probate judge instanter*. When any respondent against whom a petition has been filed seeking to have limitations placed upon the respondent's liberty pending the outcome of a full and final hearing on the merits is initially brought before the probate judge, the probate judge shall determine from an interview with the respondent and with other available persons what limitations, if any, shall be imposed upon the respondent's liberty and what temporary treatment, if any, shall be imposed upon the respondent pending further hearings. If limitations on the respondent's liberty are ordered, the probate judge may order the respondent detained under the provisions of this section at a designated mental health facility or a hospital.

Ala.Code § 22-52-7(a) (emphasis added). Pursuant to this statute, the probate judge ordered

---

questioned whether Sullivan had a legitimate expectation of privacy in the residence at issue or whether he is asserting his own Fourth Amendment rights, rather than those of Yeager. See, e.g., Rakas v. Illinois, 439 U.S. 128, 133-34 (1978); see also U.S. v. Kapperman, 764 F.2d 786, 791 n. 6 (11th Cir. 1985) (Given the government's failure to raise the question of standing, the court does not address it). Although no testimony was offered at the hearing to establish whether or not Sullivan resides at 2111 Yarbrough Circle, the court notes that this appears to be Sullivan's residence based on his presence in the bedroom asleep on August 25, 2005, and the address listed on the pretrial services report and the bond and order setting conditions of release (dated June 21, 2006). Doc. ## 5,6.

that Amy Yeager "be detained and confined on an emergency basis at **Baptist E.R. South/Meadhaven** for treatment and evaluation until such time as a probable cause hearing shall be held," and that "the Sheriff of Montgomery County or his authorized deputy shall take into custody the above named respondent using necessary means to enter the property and forthwith deliver said person to the proper authorities at **Baptist E.R. South/Meadhaven**." Defendant's Ex. B (emphasis in original).

The parties do not dispute, and the court concludes, that the Fourth Amendment's prohibition of unreasonable searches and seizures governs defendant Sullivan's rights in this case. See Glass v. Mayas, 984 F.2d 55, 58 (2d Cir.1993) (Fourth Amendment applies to seizure for involuntary commitment, an infringement of liberty tantamount to the infringement of being arrested); Maag v. Wessler, 960 F.2d 773, 775 (9th Cir.1991) ("Although there are few decisions that discuss the Fourth Amendment standard in the context of seizure of the mentally ill, all have recognized the proposition that such a seizure is analogous to a criminal arrest and must therefore be supported by probable cause."); Dowdell v. Chapman, 930 F.Supp. 533, 543 (M.D. Ala. 1996) (Applying the Fourth Amendment to involuntary civil commitment, and citing Glass and Maag.); see also Bailey v. Kennedy, 349 F.3d 731, 739 (4th Cir. 2003); Martinez v. Smith, 200 F.3d 816 (5th Cir. 1999); Anaya v. Crossroads Managed Care Systems, Inc., 195 F.3d 584, 594 (10th Cir. 1999) (collecting cases); McCabe v. Life-Line Ambulance Service, Inc., 77 F.3d 540, 544 (1st Cir. 1996); Villanova v. Abrams, 972 F.2d 792, 795-96 (7th Cir.1992); Cochrane v. Harvey, 2005 WL 2176874, 3 (N.D.Fla. 2005) (unpublished). Thus, the court evaluates the deputies'

execution of the probate judge's emergency order in light of the constraints of the Fourth Amendment.

Ordinarily, an entry by law enforcement into a home to conduct a search or make an arrest is unreasonable under the Fourth Amendment unless it is effected pursuant to a warrant. Steagald v. U.S., 451 U.S. 204, 211(1981). As the Steagald Court noted, "[i]n terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house." Id. (citations omitted). In this case – assuming, for purposes of argument, that an emergency commitment order is analogous to an arrest warrant[2] – the deputies had a warrant. However, the emergency order

---

[2] But see Villanova v. Abrams, 972 F.2d 792, 795 (7th Cir. 1992)(Noting that the analogy between a petition for commitment and an application for an arrest warrant, between a certificate of commitment and the warrant itself, and between the defendants who filled out and signed the certificates in that case to arresting officers, is "impossibly strained because in a civil commitment there is nobody who corresponds to the magistrate who issues a warrant."). At the suppression hearing in this case, the government at one point appeared to concede that the emergency order was not a warrant of any kind, stating: "There is no search warrant. There is no arrest warrant. There is an Emergency Order issued by the Probate Judge." If the emergency order were not construed as an arrest warrant, then the deputies entered the residence to make a warrantless arrest, presumably pursuant to Ala. R. Crim. P. 4.1, which permits a warrantless arrest if a law enforcement officer has probable cause to believe that a felony has been committed or is being committed, and that the person to be arrested committed it; an offense has been committed in the law enforcement officer's presence or view; or "*[t]he arrest is otherwise authorized by statute ....*"Ala. R. Crim. P. 4.1 (iii)(emphasis added). However, if the entry into the residence was in fact warrantless, the government has offered no explanation or argument as to how the emergency order exempted the deputies from the warrant requirement of the Fourth Amendment. See, e.g., McCabe v. Life-Line Ambulance Service, Inc., 77 F.3d 540, 544 (1st Cir. 1996) (Treating execution of a commitment order as a warrantless entry into a private residence to effect an involuntary commitment; no constitutional violation as entry was justified under a "special need" exception to warrant requirement."). Accordingly, for purposes of this Recommendation, the court has construed the emergency order in the best possible constitutional light as an order that is analogous to an arrest warrant, and has assumed – again, for purposes of argument – that the petition for involuntary commitment established probable cause for the issuance of the order to seize Yeager.

authorized the seizure of Amy Yeager, not Steven Sullivan.

In such circumstances – where the challenge to the search is asserted by a person not named in the warrant who was convicted on the basis of evidence uncovered during a search of his residence for one who *was* named in the warrant – the Supreme Court has considered whether an arrest warrant, as opposed to a search warrant, is adequate to protect the Fourth Amendment interests of persons not named in the warrant when their homes are searched without their consent and in the absence of exigent circumstances. In deciding this question, the Court noted:

> while an arrest warrant and a search warrant both serve to subject the probable-cause determination of the police to judicial review, the interests protected by the two warrants differ. An arrest warrant is issued by a magistrate upon a showing that probable cause exists to believe that the subject of the warrant has committed an offense and thus the warrant primarily serves to protect an individual from an unreasonable seizure. A search warrant, in contrast[,] is issued upon a showing of probable cause to believe that the legitimate object of a search is located in a particular place, and therefore safeguards an individual's interest in the privacy of his home and possessions against the unjustified intrusion of the police.

Id. at 212-13. The Steagald Court indicated that – as it had previously decided in Payton v. New York, 445 U.S. 573 (1980) – an arrest warrant alone is sufficient to authorize the entry into a person's home to effect the arrest of the person named in the warrant. Id. at 214 n. 7. "'Thus, for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.'" Id. (quoting Payton, 445 U.S at 602-603).

However, the Supreme Court determined that when the police seek to use an arrest warrant as legal authority to enter the home of a third party to conduct a search, the privacy interest of the third party in being free from an unreasonable invasion and search of his home requires police to obtain a search warrant in addition to the arrest warrant. Id. at 216; see also O'Rourke v. Hayes, 378 F.3d 1201, 1209 (11th Cir. 2004) (Under Payton, officers possessing an arrest warrant founded on probable cause have the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within, but an arrest warrant is clearly insufficient to authorize them to enter the premises of any third party, even if they believe the suspect might be there); U.S. v. Bervaldi, 226 F.3d 1256, 1267 n.11 (11th Cir. 2000) ("In Steagald, the Supreme Court held that a search warrant was required to enter one person's residence to execute an arrest warrant on another person believed to be in that residence. ... However, the Court recognized that under Payton, an arrest warrant for a suspect permitted officers to enter what they reasonably believed was that suspect's residence when they reasonably believed the suspect was there.") (citations omitted).

Thus, the question of whether deputies were required to obtain a search warrant for Yeager in addition to the emergency order (assuming *arguendo* that the latter was equivalent to a valid arrest warrant) turns on whether or not Yeager herself resided at 2111 Yarbrough Circle on August 25, 2005, or was, instead, a visitor or guest at the home of a third party. At the suppression hearing in this case, neither the government nor the defendant offered

evidence on this point.[3] However, for the reasons discussed below, the court concludes that the result in this case is the same whether or not Yeager actually lived at the home in question: the evidence seized by deputies during the search for Yeager at this address must be suppressed.

Clearly, if 2111 Yarbrough Circle was not Yeager's own residence on August 25, 2005 and, instead, the residence was merely the home of a third party, then Steagald (rather than Payton) would control this case, and the Fourth Amendment would require the deputies to obtain a search warrant to enter the home and search for Yeager. It is undisputed that the deputies did not secure such a warrant. Nor could this court construe the emergency order issued by the probate judge to constitute a search warrant as, under Alabama law, the probate judge has no authority to issue such a warrant. The Alabama Rules of Criminal Procedure limit the authority to issue search warrants to

> (i) A magistrate who is authorized to practice law in the State of Alabama, or who is authorized by law to issue search warrants, within the magistrate's territorial jurisdiction; or
> (ii) A municipal judge, if the search is to be conducted within the police jurisdiction of the municipality; or
> (iii) A district judge within the county; or

---

[3] The only testimony elicited at the hearing relating specifically to Amy Yeager' residence was as follows:
Q. [By defense counsel] It appears that her [Yeager's] present – at least according to this document her present residence is Jackson ER.
A. [By Sgt. Barrett] That's what this document states.
The document to which Sgt. Barrett referred (the petition for involuntary commitment) was dated August 16, 2005. As to August 25, 2005, the government offered no testimony that Yeager actually resided at 2111 Yarbrough Circle on that date, or that deputies believed that this was her residence on that date. At most, Sgt. Barrett testified that he was acting on the emergency order – an order which included the Yarbrough Circle address as Yeager's "location." Defendant's Ex. B.

     (iv) A circuit judge within the judge's circuit.

Ala. R. Crim. P. 3.7. Thus, if 2111 Yarbrough Circle was merely the home of a third party and, therefore, a search warrant was required under <u>Steagald</u>, the court would be compelled to suppress the incriminating evidence found by the deputies during their search for Yeager in the residence in the absence of such a warrant.

     The same result would obtain even if 2111 Yarbrough Circle were in fact Yeager's residence – and, thus, only an arrest warrant was required under <u>Payton</u> – at the time that the deputies executed the emergency order and entered the home. The Eleventh Circuit has held that <u>Payton</u> requires a two-part inquiry to determine if entry pursuant to an arrest warrant complies with the Fourth Amendment's proscription of unreasonable searches. <u>Bervaldi</u>, 226 F.3d at 1263 (citing <u>U.S. v. Magluta</u>, 44 F.3d 1530, 1533 (11th Cir. 1995)). The Court decided "that 'first, there must be a reasonable belief that the location to be searched is the suspect's dwelling, and second, the police must have "reason to believe" that the suspect is within the dwelling.'" <u>Bervaldi</u>, 226 F. 3d at 1263 (citation omitted). "Elaborating on this inquiry, [the Court] explained that 'for law enforcement officials to enter a residence to execute an arrest warrant for a resident of the premises, the facts and circumstances within the knowledge of the law enforcement agents, when viewed in the totality, must warrant a reasonable belief that the location to be searched is the suspect's dwelling, and that the suspect is within the residence at the time of entry.'" <u>Id</u>. (citation omitted). The government has the burden of establishing that the entry in question meets this two part test. <u>U.S. v. Louisuis</u>, 2006 WL 2193820, 2 & n. 2 (M.D.Fla. 2006) (unpublished).

In this case, the facts and circumstances within the knowledge of law enforcement concerning Amy Yeager and her connection to 2111 Yarbrough Circle were extremely scanty, at least based on the testimony presented in this case. According to Sgt. Barrett, the sheriff's deputies have a "probate car" which "goes out and picks up our Emergency Commitment Orders and Commitment Orders for the Probate Judge of Montgomery County." The probate judge signed the emergency order authorizing Yeager to be picked up on August 25, 2005, and the deputies collected it and traveled to the address listed on the order on the afternoon of the same date. The deputies may or may not have seen the petition for involuntary commitment filed on August 12, 2005 prior to entering the residence – Sgt. Barrett testified that the deputies liked to look at the narrative on the involuntary commitment petition to help them identify the subject of the order, although he himself did not receive the petitions that day, and he could not say, because of the dates, that this petition (Defendant's Ex. A) actually "goes with" the emergency order (Defendant's Ex. B). However, in any case, it is undisputed that the Yarbrough Circle address does not appear in the petition. Further, there nothing in the testimony before the court suggests that the deputies had any prior familiarity with Yeager or the facts related in the petition. Thus, the court has before it no evidence indicating that the deputies knew of any connection between Yeager and the residence into which they made entry other than the fact that this was the "location" listed on the emergency order.[4]

---

[4] The probate judge may have had additional information concerning Yeager's connection to this residence and her whereabouts on that particular day. However, the inquiry under Payton and

The emergency order alone is insufficient to support a reasonable belief on the part of the deputies that the Yarbrough Circle address was, in fact, Yeager's "dwelling,"[5] rather than merely her "location," as required by the first part of the Bervaldi test – if, indeed, the deputies even harbored this belief.  See *supra* at n. 3.  Nothing in the record indicates that the deputies conducted any investigation, other than reviewing the emergency order – for example, by checking a telephone directory or verifying the receipt of mail, seeking information from neighbors or relatives, or observing activity at the house – to confirm that the Yarbrough Circle home was in fact Yeager's residence prior to their entry.

Further, even if the deputies reasonably believed that Yeager lived at this address, no evidence before the court establishes that they also reasonably believed that Yeager was within the residence at the time of entry, as required by the second part of the Brevaldi test. The government did not, for example, present testimony that the deputies saw anything at the house indicating Yeager's presence that Thursday afternoon, such as her car or other items belonging to her.  Nor did the United States offer evidence that the deputies knew (or even made reasonable assumptions about) Yeager's daily schedule and the times or dates when

---

Bervaldi concerns the knowledge and beliefs of the law enforcement agents executing the warrant at the time of their entry, not those of the probate judge.  Further, the record in this case does not disclose the nature or extent of the probate judge's knowledge concerning this residence, in any event. Sgt. Barrett said that he believed that the probate judge "talks to mental health people ... and talks to the Mental Health Authority and he talks to the ER to gather all the information he has on the subject ...," but he did not know with whom the probate judge spoke on this particular order.

[5] The Payton Court described a "dwelling" as the place "in which the suspect lives." Payton, 445 U.S. at 603 ("[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.").

she was likely to be present. Further, there is no suggestion in the record that other persons on the premises[6] (or elsewhere) told the deputies anything concerning Yeager's likely whereabouts on the afternoon of August 25, 2005. The government did not even offer testimony that deputies had found in the past that the probate judge's emergency orders commonly showed current addresses which led to valid seizures of individuals who were at home at the time of the entry. In short, the court was presented with no evidence that the deputies carried out even the most minimal investigation to establish, or otherwise had any basis to expect, Yeager's presence in the home.

It is true that, as the Eleventh Circuit has noted, "[n]either Payton nor this court's Fourth Amendment jurisprudence requires law enforcement officers to be absolutely certain that a suspect is at home before entering a residence to execute an arrest warrant." Magluta, 44 F.3d at 1538. However, this court cannot, consistently with the requirements of the Fourth Amendment, uphold the entry and search of a private residence without evidence that the deputies had *some* reason, other than an address listed earlier in the day on an emergency order, to warrant their belief that Yeager was actually within the residence at the time of entry. Without such proof, the court is compelled to conclude that the evidence seized by deputies during their entry and search of 2111 Yarbrough Circle is due to be suppressed as

---

[6] The deputies approached and identified some individuals outside the residence prior to the entry, and detained several others inside thereafter.

evidence secured in violation of the Fourth Amendment.[7]

## Conclusion

For the foregoing reasons, it is the RECOMMENDATION of the Magistrate Judge that defendant's Motion to Suppress Search, filed July 13, 2006 (Doc. # 11), be GRANTED.

Additionally, it is

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before close of business August 31, 2006. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the

---

[7] Because it concludes that the entry and search in this case were unlawful, the court does not reach the question of whether the deputies were entitled to engage in a protective sweep of the premises under Maryland v. Buie, 494 U.S. 325 (1990).

decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done, this 18th day of August, 2006.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE